344 So.2d 894 (1977)
C.H. ROBINSON COMPANY, a Foreign Corporation, Appellant (Defendant),
v.
L & M BROKERAGE CO., INC., a North Carolina Corporation, Appellee (Plaintiff).
No. Z-473.
District Court of Appeal of Florida, First District.
March 29, 1977.
Rehearing Denied May 9, 1977.
William C. Frye of Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Harold F. Baker and Alan Wiseman of Howrey & Simon, Washington, D.C., for appellant.
Angus W. Harriett of Harriett & Sproull, Palatka, for appellee.
*895 MILLS, Acting Chief Judge.
Robinson appeals from a judgment entered in favor of L & M following a nonjury trial in a breach of contract action. L & M contends Robinson breached an agreement to collect payments for potatoes purchased by Dixie Snack Foods from L & M, resulting in the loss of $19,798.96 by L & M. Robinson contends that it neither guaranteed collection nor guaranteed the debt in the event of Dixie's default.
L & M engaged in the business of selling potatoes. Robinson was a broker of potatoes. Prior to the transactions giving rise to this case, Dixie had purchased potatoes from L & M through its broker, Robinson, but due to financial difficulties filed for Chapter 11 bankruptcy, at which time it owed L & M $30,000.00 to $40,000.00 for potatoes.
Dixie contacted Robinson seeking to purchase additional potatoes from L & M. L & M agreed to sell Dixie the potatoes provided Robinson collected the purchase price following each shipment to Dixie. Robinson agreed to make the collection from Dixie. In connection with each purchase by Dixie from L & M, Robinson, as broker, issued and mailed to both L & M and Dixie a Brokers Standard Memorandum of Sale embodying the terms of the transaction. L & M in turn sent Robinson an invoice for each sale, reflecting the amount Dixie owed for each shipment of potatoes. The Brokers Standard Memorandum of Sale provided: "It is understood ... this sale is made in contemplation of and subject to trade terms and definitions of the PACA [Perishable Agricultural Commodities Act]... ." The written agreement further stated that the terms of sale between the parties were those specified therein and that "unless the seller or the buyer makes immediate objection upon receipt of his copy ... he shall be conclusively presumed to agree that the terms of sale as set forth herein are fully and correctly stated." It is uncontradicted that L & M received the respective written agreements and did not object to the terms expressed therein. L & M's invoices provided that "C.H. Robinson to collect and remit".
Robinson collected and remitted for a period of time but did not collect for the last six shipments because Dixie failed or refused to pay. Subsequently, Dixie filed for bankruptcy. This resulted in the suit by L & M against Robinson.
It is well established that when an agreement between the parties is expressed in writing, prior oral negotiations or agreements which are not embodied in the unambiguous contract cannot contradict its written terms. The written instruments represent the final expressions of the agreement between the parties which may not be contradicted by parol or extrinsic evidence. Section 672.202, Florida Statutes (1975). We are concerned here, therefore, with the terms of the written agreements between the parties and are not concerned with the prior verbal agreements.
The invoices that L & M sent to Robinson provide that Robinson is "to collect and remit". The terminology "collect and remit" is standard in the commodities brokerage business. Pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, the Department of Agriculture of the United States promulgated Regulation 7 C.F.R. 46.28(c), which provides in part:
"In the absence of a specific agreement, a broker is not responsible for payment to the seller by the buyer. Agreement to collect from the buyer and remit to the seller is not a guarantee by the broker that the buyer will pay for the produce purchased, unless there is a specific agreement by the broker that he will pay if the buyer does not pay... ."
At the most, L & M established an agreement with Robinson whereby Robinson would collect the invoice price for the potatoes from Dixie and remit to L & M. Robinson incurred no liability for Dixie's failure or refusal to pay. There was no provision in the agreements that Robinson would pay L & M if Dixie did not pay. Robinson neither guaranteed collection nor guaranteed the debt in the event of Dixie's default. *896 The $19,798.96 liability L & M seeks to impose on Robinson is so large as to be out of proportion to the $324.57 brokerage commission L & M agreed to pay Robinson. This raises considerable doubt as to whether Robinson would have assented to such a liability unless the consideration to be paid by L & M to Robinson was raised to correspond in some respect to the liability assumed and was set forth in the written agreements between the parties. The written agreements contained no such provision.
The trial court's award of $324.57 to Robinson has not been contested.
We reverse that part of the judgment awarding L & M $19,474.39. We affirm that part of the judgment awarding Robinson $324.57.
SMITH, J., and DRURY, ARVEL, Associate Judge, concur.